UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) 1:06-cv-00009 JWS<br>) |
| vs. | ) ORDER AND OPINION<br>) |
| FEDERAL HIGHWAY ADMINISTRATION, *et al.*, | ) [Re: Motion at Docket 170]<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| STATE OF ALASKA, | )<br>) |
| Intervener-Defendant. | )<br>) |

**I. MOTION PRESENTED**

At docket 170, intervener-defendant State of Alaska ("the State") moves for clarification of the injunction included in this court's amended judgment at docket 117. The State's supporting memorandum is at docket 171. Defendants Federal Highway Administration, *et al.* ("Federal Defendants") respond at docket 180. Plaintiffs Southeast Alaska Conservation Council, *et al.* ("Plaintiffs") respond at docket 181. The State replies at docket 183. Oral argument has not been requested and would not be of assistance to the court.

## II.  BACKGROUND

The capital of Alaska, Juneau, is inaccessible by road or railroad.  Aside from daily scheduled air service, the only means of public access for Alaskans who wish to visit or depart from their capital city is the Alaska Marine Highway System, which operates ferries throughout Southeast Alaska.  There has long been interest in creating better access to the capital, and toward that end the Juneau Access Improvements Project ("Project") was developed by the Alaska Department of Transportation and Public Facilities ("ADOT").  Other than improvement of the existing ferry system, all of the alternatives considered for the Project contemplated construction of a road across federal lands in the Tongass National Forest, an undertaking requiring various federal approvals and permits, which in turn require preparation of an environmental impact statement ("EIS") to comply with the National Environmental Policy Act ("NEPA").

An EIS was prepared for the Project.  It identified Alternative 2B as the preferred choice among several which had been considered.  Alternative 2B calls for construction of a new highway linking an existing road near Juneau to a new ferry terminal to be constructed much closer to Haines, Alaska, (which is connected by road through Canada to Alaska's highway system) than the existing terminal in Juneau.  The new highway would proceed northward along the East side of Lynn Canal through the Tongass National Forest.

Plaintiffs filed suit attacking the adequacy of the EIS.  This court found the EIS defective because the EIS did not adequately consider the alternative of improving the existing ferry service to and from Juneau.  This court enjoined further action on the Project:

> Any and all construction activities related to the Juneau Access
> Improvements Project and any and all activities dependent upon the
> issuance of a valid environmental impact statement, are ENJOINED until
> such time as defendants demonstrate full compliance with 42 U.S.C.
> § 4332, its implementing regulations, and this Court's Order of Feb. 13,
> 2009 (Doc. No. 105).[1]

In *Southeast Alaska Conservation Council v. Federal Highway Administration*,[2] the Ninth Circuit Court of Appeals affirmed this court's decision.

The State's pending request for clarification asks whether the injunction would prohibit the State's receipt and recording of an easement along the East side of Lynn Canal to be issued by the United States Forest Service. The State first says the easement would "authorize engineering field work and other activities necessary or incident to highway and utility planning, design and environmental review processes."[3] The nature and extent of the field work and other activities is not defined. Then, backpedaling in its reply memo, the State says, "[t]o remove any doubts, the state is not seeking construction authorization from the Forest Service and is not asking the court for clarification that construction activities would be authorized under the injunction."[4] That still leaves the parameters of the easement unclear. Any easement worthy of the name would necessarily authorize something to take place somewhere within the easement.

---

[1]Doc. 117 at ¶ 5.

[2]649 F.3d 1050 (9th Cir. 2011).

[3]Doc. 171 at p. 2.

[4]Doc. 183 at p. 8.

## III. DISCUSSION

The State relies on a miscellaneous provision in the Safe, Accountable, Flexible, Efficient Transportation Equity Act,[5] an 833-page act passed in 2005, authorizing funds for federal highway aid and other purposes. Section 4407 is the miscellaneous provision. Its text reads in its entirety as follows:

> Notwithstanding any other provision of law, the reciprocal rights-of-way and easements identified on the map numbered 92377 dated June 15, 2005, are hereby enacted into law.[6]

The court understands that § 4407 reflects a Congressional acknowledgment of the need for both the federal government and the State to have access across one another's land holdings in Southeast Alaska for a variety of public purposes, such as roads connecting communities, utility corridors, access to log transfer sites, access to marine facilities, etc.[7]

Section 4407 does not identify any easement with specificity, it merely references a map on which general locations for easements are drawn. The statute does not shed any light on the size, duration, specific route, conditions, specific purpose, or extent of activity which would be authorized by any particular right-of-way or easement. Recognizing the vague nature of § 4407, the State, acting through ADOT, and the United States, acting through the United States Department of Agriculture,

---

[5]Public Law 109-59, 119 Stat. 1144 (August 10, 2005).

[6]*Id*. at 119 Stat. 1777.

[7]*See* Declaration of Albert H. Clough at doc. 171-1 and Memorandum of Understanding at doc. 171-4.

Forest Service, Alaska Region,[8] entered into a Memorandum of Understanding ("the MOU") in September of 2006, whose purpose was "to establish a framework and process for granting the reciprocal rights-of-way and easements described in Section 4407 . . . ."[9]

The essence of the State's argument is that an easement does not depend on issuance of an EIS because it was "enacted into law" by § 4407, "[n]otwithstanding any other provision of law." In their briefing, the State and the Federal Defendants spar over whether or not when an easement is "enacted into law" it has been "granted." In the court's view that match is being fought too soon. The issue before the court is whether an EIS is required before some as yet unidentified easement may be received and recorded without violating the injunction.

With respect to that issue, the State's "notwithstanding" argument overlooks the vagaries of § 4407 and the provisions of the MOU. The MOU establishes that rights-of-way and easements granted by the State or the federal government pursuant to § 4407 "will be granted consistent with their respective obligations to protect the scenic, archaeological, recreation, and fish and wildlife values, resources and habitats on National Forest System lands and State of Alaska lands."[10] Because it is clear that the contours of any right-of-way or easement created pursuant to § 4407 will be shaped by

---

[8]Both the United States Department of Agriculture and United States Forest Service are included among the Federal Defendants.

[9]Doc. 171-4 at p. 1.

[10]Doc. 171-4 at p. 1.

a good-faith evaluation of these values, the nature and extent of such a right-of-way or easement cannot be known until the MOU process has been completed.

Even if the State is correct to say that an EIS may not be required to support receipt and recording of some sort of easement along the East side of Lynn Canal, no specific easement has yet been identified.  So, the court is being asked by the State to advise whether some unidentified easement would violate the injunction.  Because it is impossible to answer that question, the court concludes that the receipt and recording of an easement may not proceed until the easement has been reduced to a specific right-of-way or easement defined by the signatories to the MOU after they take into account the requirements of the MOU.  Once that has been accomplished, the court could sensibly be asked to determine whether receipt and recording of that specific easement would violate the injunction.  The pending request by the State is premature. The court declines to grant the relief requested by the State, but without prejudice to a subsequent request which relates to a specific easement which has been developed though the MOU process.

Given this resolution of the State's request, the court deems it unnecessary at this time to resolve the arguments raised in the parties' briefing.  Those arguments may be renewed should the State return to this court asking it to clarify the injunction with respect to receiving and recording a specific easement which has been developed through the MOU process.

## IV. CONCLUSION

For the reasons above, the motion at docket 170 is **DENIED** without prejudice to a subsequent motion which is consistent with this order.

DATED this 3rd day of October 2013.

/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE